**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DE YI HE, | ) | Case No. 4:26-cv-894 |
| | ) | |
| Petitioner, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Darrell A. Clay |
| | ) | |
| WARDEN OF MAHONING | ) | |
| COUNTY JAIL, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## OPINION AND ORDER

Petitioner De Yi He, a citizen and national of China unlawfully present in the United States since 2023, has been detained in immigration custody since February 10, 2026.  An immigration judge ordered him held without bond, which prompted him to file this petition for a writ of habeas corpus without a lawyer as well as a motion for a temporary restraining order.  He seeks his immediate release from detention or, in the alternative, a bond hearing.  For the following reasons, the Court **DISMISSES** the petition.

## STATEMENT OF FACTS

According to Petitioner, Mr. He entered the United States in March 2023 and lived in New York since then.  (ECF No. 1, PageID #6.)  In New York, Mr. He represents that he has a home, a job, family support, and church community.  (ECF No. 2, PageID #13.)  He provides no information regarding how he ended up in detention or other circumstances relating to his immigration status or pending

removal proceedings. On March 12, 2026, the immigration court in Cleveland, Ohio ruled that it did not have the authority to redetermine his bond and order him detained in the Mahoning County, Ohio jail. (ECF No. 1, PageID #2; ECF No. 2, PageID #13.) For this reason, he claims that an appeal to the Board of Immigration Appeals would be futile. (ECF No. 1, PageID #7.) He alleges that he is not a danger or flight risk and that a cousin who lives in New York will sponsor him. (*Id.*, PageID #6.)

## STATEMENT OF THE CASE

On April 16, 2026, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) He alleges that his detention violates: (1) the Immigration and Nationality Act; and (2) the Due Process Clause of the Fifth Amendment. In short, he seeks relief from the order of detention pursuant to which he is held.

## HABEAS STANDARD

Under 28 U.S.C. § 2243, a court shall forthwith issue a writ or order the respondent to show cause why a writ should not issue, "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus. This statute requires an initial screening of a petition. *See Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). At this stage of the proceedings, a court accepts as true the allegations in the petition and construes them in favor of the petitioner. *Id.* "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the

2

judge must dismiss the petition." Rule 4 of the Rules Governing Section 2254 Cases (applicable to petitions under Section 2241 through Rule 1(b)).

## JURISDICTION

Section 2241(c)(3) extends the availability of the writ of habeas corpus to persons "in custody in violation of the Constitution or law or treaties of the United States." 8 U.S.C. § 1252(a)(2) provides that no court has jurisdiction to review any immigration matter except as provided by statute: "Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review" immigration cases.

As relevant here, judicial review is available in two circumstances. First, a final order of removal is subject to judicial review by "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings," *not* the district court. 8 U.S.C. § 1252(b)(2); *see also id.* § 1252(b)(9). This provision does not apply here.

Second, 8 U.S.C. § 1252(a)(2)(D) preserves the ability to petition for a writ of habeas corpus to raise a constitutional issue. In such a case, however, Congress significantly limited judicial review and the ability of courts to engage in fact-finding:

> no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, . . . or by any other provision of law (statutory or nonstatutory), to review such an order [a final order of removal] or such questions of law or fact [those involving interpretation and application of statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States].

*Id.* § 1252(b)(9). This statute encompasses challenges to the decision to seek removal and the decision to detain an alien in the first place. *See Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see also Nielsen v. Preap*, 586 U.S. 392, 402 (2019). Significantly, Congress specifically divested courts of jurisdiction to review bond determinations and other discretionary determinations pending removal. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

Determinations of bond or detention are discretionary, even under administrative policy in effect until the middle of 2025. *See* 8 U.S.C. § 1226(a). For this reason, the Court finds that Congress has not conferred jurisdiction on federal district courts to interpret or apply Section 1225 or Section 1226 of the INA. Divesting federal district courts of jurisdiction over such determinations makes sense. After all, Congress created an administrative process intended to act quickly (though in practice its actions have been anything but) in a field requiring specialized knowledge generally outside the experience of the inferior federal courts.

## I. Split of Authority in the Inferior Courts

Notwithstanding the sharp jurisdictional limits in Section 1252, federal district courts have scarcely noticed that the statute exists. But federal courts are courts of limited jurisdiction possessing only the jurisdiction that Congress gives them pursuant to the Constitution.

Whatever the reason judges in the inferior courts have skirted analysis of the jurisdictional limits of Section 1252, they have taken competing approaches to whether petitioners are entitled to a bond hearing pending removal. The majority of courts agree with Petitioner that such a hearing is warranted. *See, e.g., Rodriguez v.*

4

*Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *9 (D. Mass. July 7, 2025); *Paredes Padillia v. Galovich, et al.*, No. 25-cv-863, 2025 WL 3251446, at *6 (W.D. Wis. Nov. 21, 2025); *Diaz-Villatoro v. Larose, et al.*, No. 25-cv-3087, 2025 WL 3251377, at *4 (S.D. Cal. Nov. 21, 2025). However, other courts have taken a contrary position, agreeing with the Administration's reading of the statute. *See, e.g., Coronado v. Secretary, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229, at *6–12 (S.D. Ohio Dec. 15, 2025); *Mejia Olalde v. Noem*, No. 1:25-cv-00168, 2025 WL 3131942, at *2 (E.D. Mo. Nov. 10, 2025); *Vargas Lopez v. Trump*, No. 8:25CV526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, No. 3:25-cv-02325, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025); *see also Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026).

In the Court's view, both approaches are mistaken. The statutory framework provides a limited role for district courts to review a habeas petition in the immigration context not concerning a final order of removal. 8 U.S.C. § 1252(a)(2)(D). That is, Section 1252 preserves the ability of district courts to review a petition for a writ of habeas corpus regarding a constitutional issue. *Id.* For example, such claims might challenge what amounts to indefinite detention. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (recognizing the serious constitutional concerns of indefinite detention following a final order of removal); *but see Jennings*, 583 U.S. at 297 (finding no statutory right to periodic bond hearings for aliens detained during the pendency of removal proceedings).

Outside of such limited and narrow constitutional claims, which Petitioner does not raise, other constitutional challenges quickly implicate and often become entwined with interpretation and implementation of the statutory framework and its associated procedures.  Such is the case with Petitioner's claims here.  Indeed, he alleges violation of the Immigration and Nationality Act and lists that as his first claim for relief.  There might well be good reason for that.  In the immigration context, Congress has broad discretion to determine what process is due.  *See, e.g. Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *Reno v. Flores*, 507 U.S. 292, 309 (1993).  And it may enact laws that "constitutionally detain deportable aliens during the limited period necessary for their removal proceedings," even if the Constitution does not tolerate similar treatment of citizens.  *Demore v. Kim*, 538 U.S. 510, 526 (2003); *Carlson v. Landon*, 342 U.S. 524, 545 (1952) (holding, in an immigration case, that the Eighth Amendment's Excessive Bail Clause does not require that bail be available, only that, when it is, bail is not excessive).

Put another way, a constitutional challenge to detention pending removal and entitlement to a bond hearing collapse into analysis of the statutory and regulatory regime—whether, for example, Section 1226(a) entitles an alien to bond pending removal or whether Section 1225(b) authorizes the government to detain an alien.  Congress has made clear that district courts lack the jurisdiction to make such determinations, even on a habeas petition under Section 2241.  *See* 8 U.S.C. § 1252(b)(9).  As the Supreme Court has long recognized, these statutory provisions aim "at protecting the Executive's discretion from the courts—indeed, that can fairly

6

be said to be the[ir] theme." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486 (1999).

Nonetheless, the federal district courts that have considered the issues raised in the petition have not hesitated to wade into interpretation of a statutory scheme where Congress has made clear they have little, if any, place. The Court fails to see how it has jurisdiction to consider the petition.

## II.    Exhaustion

Out of an abundance of caution, if the Court is mistaken in its read of the interplay between Section 1252 and Section 2241, the Court proceeds. If vested with jurisdiction, the familiar principles of habeas practice and procedure apply. In light of the congressional limitations on jurisdiction, prudential principles of exhaustion counsel that a petitioner pursue his administrative remedies to a final judgment from the Board of Immigration Appeals before seeking a writ of habeas corpus. Because of the expertise that the Board of Immigration Appeals and the immigration courts more generally have in the statutory and administrative regime governing the admission and removal of foreigners, "'many of the purposes for requiring exhaustion' may be served by permitting agency review in the first instance." *Ba v. Director of Detroit Field Off.*, No. 4:25-cv-02208, 2025 WL 2977712, at *3 (N.D. Ohio Oct. 22, 2025) (quoting *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-01621, 2025 WL 2444114, at *11 (N.D. Ohio Aug. 25, 2025)); *see also Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (discussing the benefits of limiting judicial interference in agency affairs in the immigration context).

**II.A.  Prudential Exhaustion**

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the [habeas] petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused."  *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted).  In *Leonardo*, the petitioner pursued habeas review of the Immigration Court's adverse bond determination before he appealed to the Board of Immigration Appeals.  *Id.*  The Ninth Circuit determined that filing a habeas petition in federal district court was improper because the petitioner "should have exhausted administrative remedies by appealing to the BIA before asking the federal district court to review the IJ's decision."  *Id.* (citing *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 819 (9th Cir. 2003)).

The Sixth Circuit has endorsed this procedure for challenging bond determinations, albeit in a short, unpublished order.  *See Rabi v. Sessions*, No. 19-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018) (citing *Leonardo*, 646 F.3d at 1160); *see also Hernandez Torrealba*, 2025 WL 2444114, at *8 (applying the Ninth Circuit's test for prudential exhaustion).  Previously, the Court has done so as well.  *See Tecum Pastor v. Director of Detroit Field Off., U.S. Immigr. & Customs Enf't*, 814 F. Supp. 3d 875, 881 (N.D. Ohio 2025); *Monroy Villalta v. Greene*, 794 F. Supp. 3d 528, 530 (N.D. Ohio 2025); *Laguna Espinoza v. Director of Detroit Field Off., U.S. Immigr. & Customs Enf't*, No. 4:25-cv-02107, 2025 WL 2878173, at *2 (N.D. Ohio Oct. 9, 2025); *Ba*, 2025 WL 2977712, at *2.

8

In this case, Mr. He has available to him an appeal to the Board of Immigration Appeals.  As in *Leonardo*, 646 F.3d at 1160, prudential principles of exhaustion counsel that Petitioner pursue his administrative remedies to a final judgment from the Board of Immigration Appeals before seeking a writ of habeas corpus.  In his petition, count one alleges violation of the Immigration and Nationality Act.  Though styled as a Fifth Amendment due process claims, count two also invites review of the process due under the statute and its associated procedures.  Further, Petitioner seeks review of the application and interpretation of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  In other words, any determination regarding detention here turns on interpretation and application of the governing removal regime.

In the first instance, such review should proceed before the Board of Immigration Appeals to "apply its experience and expertise without judicial interference." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (abrogated on other grounds); *see also Rojas-Garcia* , 39 F.3d at 819 (acknowledging that a "petitioner must exhaust administrative remedies before raising the constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal"); *Monroy Villalta*, 794 F. Supp. 3d at 531; *Laguna Espinoza*, 2025 WL 2878173, at *2; *Ba*, 2025 WL 2977712, at *2.

## II.B.  Futility

Petitioner implies that an appeal to the Board of Immigration Appeals would be time consuming and futile in light of *Matter of Yajure Hurtado*.  But courts in this Circuit have determined that even where there is a "high probability of denial" of a petitioner's appeal of an Immigration Judge's bond decision, such a probability "does

not weigh in favor of waiving exhaustion." *Hernandez Torrealba*, 2025 WL 2444114, at *11.  Indeed, the acting Attorney General remains free to exercise his discretion to use an appeal to the Board of Immigration Appeals to change or modify the policy about which Petitioner complains.

In *Hernandez Torrealba*, the petitioner sought relief from the exhaustion requirement based on a decision of the Board of Immigration Appeals affirming the denial of bond.  But the court was "not certain how the BIA will rule on Petitioner's appeal given the particular circumstances of her case, and it would be presumptuous of this Court to simply assume that the BIA will rule against Petitioner." *Id.*  So too here.  His case might well prove to be one in which the agency changes or refines its policy announced in *Matter of Yajure Hurtado* through agency adjudication.  That prerogative belongs in the first instance to the agency, which also has the knowledge and ability and to adopt policies that are more tailored to the statutory scheme it is tasked with implementing in a way that courts are not.

"[M]any of the purposes for requiring exhaustion' may be served by permitting agency review in the first instance.'" *Hernandez Torrealba*, 2025 WL 2444114, at *11 (quoting *Beharry*, 329 F.3d at 62).  Indeed, courts outside this Circuit acknowledge that the purposes of requiring exhaustion in the immigration context "include protecting the authority of administrative agencies, limiting interference in agency affairs, developing the factual record to make judicial review more efficient, and resolving issues to render judicial review unnecessary." *Beharry*, 329 F.3d at 62 (citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); *McKart v. United States*, 395

10

U.S. 185, 193–95 (1969)).  In any event, the Court has no jurisdiction to review the decisions of the Board of Immigration Appeals in *Hurtado*.  That authority rests, if anywhere, with the Sixth Circuit.  For these reasons, the Court cannot say that exhaustion is futile or a waste of time or that prudential reasons apply for excusing it.  Nor does requiring prudential exhaustion "create[] hardship for hardship's sake," as Petitioner suggests.  (ECF No. 1, ¶ 100, PageID #32.)  To the contrary, it promotes judicial restraint, separates the powers and proper roles of the agency and the courts in the administrative regime Congress created, and reserves judicial review from decisions of the agency for the Sixth Circuit (something that no petitioner, to the Court's knowledge, has yet availed himself of).

## CONCLUSION

For these reasons, the Court lacks jurisdiction over the petition but if it had jurisdiction would require exhaustion as a prudential matter.  Accordingly, the Court **DISMISSES** the petition for a writ of habeas corpus and **DENIES AS MOOT** Petitioner's motion for a temporary restraining order.

**SO ORDERED.**

Dated:  April 21, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio

11